1

2

3

4

5              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
6                      AT TACOMA

7   EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION,
8                                                 CASE NO. C07-5472BHS
                 Plaintiff,
9
                                                  ORDER GRANTING
10        v.                                      DEFENDANT'S MOTION
                                                  FOR ENTRY OF JUDGMENT
11  FOOT LOCKER RETAIL, INC., a                   ON THE VERDICT AND
    subsidiary of FOOT LOCKER, INC.,              DENYING PLAINTIFF'S
12                                                MOTION FOR NEW TRIAL
                 Defendant.
13

14
          This matter comes before the Court on Plaintiff's motion for a new trial (Dkt. 98)
15
    and Defendant's motion for entry of judgment on the verdict (Dkt. 97).
16
                                    **I.  BACKGROUND**
17
          On April 3, 2009, following a nine-day trial, the jury returned a verdict form which
18
    found no liability on the part of Defendant Foot Locker Retail, Inc. ("Foot Locker") on all
19
    of Plaintiff Equal Employment Opportunity Commission's ("EEOC") claims. Dkt. 14
20
    (verdict form) (Questions 1 through 5). However, the jury also found that each claimant
21
    was entitled to punitive damages. *Id*. at 14 (Questions 6, 7, and 8).[1]
22
          The verdict form was organized as follows: Questions 1 through 3 addressed the
23
    three hostile work environment sexual harassment claims that EEOC alleged on behalf of
24

25
          [1] The parties stipulated to use of the verdict form for Questions 1 through 5. *See* Dkt. 59,
26  42-51 (joint proposed verdict form). Foot Locker opposed submission of Questions 6 through 8
    on the grounds that EEOC had no evidence that Foot Locker acted with malice or reckless
27  disregard. *See* Dkt. 59-2, 15-17 (joint statement of disputed instructions). The Court granted
    EEOC's request to submit Questions 6 through 8 to the jury.
28

the three claimants; Question 4 addressed the retaliation claim that EEOC alleged on

behalf of claimant Rebecca Anderson Leonard for Foot Locker's failure to return Ms.

Leonard to the Tacoma Mall Kids Foot Locker store; Question 5 addressed the retaliation

claim that EEOC alleged on behalf of Ms. Leonard based on the termination of Ms.

Leonard's employment; and Questions 6 through 8 addressed punitive damages for the

respective claimants. *Id*.

Jury Instruction No. 22 defined punitive damages. Dkt. 92 at 23.

**A.     QUESTIONS 1 THROUGH 5**

First, after finding that Foot Locker subjected Ms. Leonard to unwelcome sexual

advances (Questions 1(a) and 1(b)), the jury provided the following answer on the verdict

form:

> 1. (c) Was the conduct sufficiently severe or pervasive to alter the
> conditions of Rebecca Anderson Leonard's employment and create a
> sexually abusive or hostile work environment? [Answer:] No.
> *If your answer to Question 1(c) is "yes," proceed to 1(d). If it is
> "no," please proceed to Question 2. You need not answer questions 1(d)-
> (i).*

Dkt. 93, 1-2 (verdict form) (emphasis in original).

The jury did not answer Questions 1(d)-(i). The jury provided identical answers for

the two hostile work environment sexual harassment claims that the EEOC alleged on

behalf of claimants Rachel Anderson (*see* Question 2, *id.*, 4-6) and Shamaleca Taylor (*see*

Question 3, *id.*, 7-9). The jury did not answer Questions 2(d)-(i) or 3(d)-(i).

Second, the jury found that Foot Locker did not subject Ms. Leonard to adverse

employment actions by not returning her to the Tacoma Mall Kids Foot Locker store (*see*

Question 4(b), *id*. at 10) or by terminating her employment (*see* Question 5(b), *id*. at 12).

Question 4(b) instructed the jury: "If your answer to Question 4(b) is 'yes,' proceed to

4(c). If it is 'no,' please proceed to Question 5. You need not answer questions 4(c)-(f)."

*Id*. at 10. The jury did not provide answers for Questions 4(c) through (f). *Id*., 10-11.

Question 5 was the final question regarding EEOC's liability claims. Question 5(b)

instructed the jury as follows: "If your answer to Question 5(b) is 'yes,' proceed to 5(c). If

it is 'no,' you need not answer any additional questions." *Id*. at 12. The jury did not provide answers for Questions 5(c) through (f). *Id*., 12-13. However, the jury proceeded to answer Questions 6, 7, and 8.

**B.     QUESTIONS 6 THROUGH 8**

The jury provided the following answers to the verdict form questions regarding punitive damages:

> **Question 6**: Did Defendant act with malice or reckless disregard for Rebecca Anderson Leondard's federally protected rights? If so, please indicate the monetary amount to which she is entitled: [Answer:] $60,000.00
> **Question 7**: Did Defendant act with malice or reckless disregard for Rachel Anderson's federally protected rights? If so, please indicate the monetary amount to which she is entitled: [Answer:] $35,000.00
> **Question 8**: Did Defendant act with malice or reckless disregard for Shamaleca Taylor's federally protected rights? If so, please indicate the monetary amount to which she is entitled: [Answer:] $5,000.00

*Id*. at 14.

**C.     PUNITIVE DAMAGES JURY INSTRUCTION**

The jury instruction regarding punitive damages read:

**Instruction No. 22**
If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are not to compensate a plaintiff, but to punish a defendant and to deter a defendant and others from committing similar acts in the future.
The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that the defendant's conduct was malicious, oppressive or in reckless disregard of the claimants' rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the claimants' rights if, under the circumstances, it reflects complete indifference to the claimants' safety or rights, or the defendant acts in the face of a perceived risk that its actions will violate the claimants' rights under federal law. An act or omission is oppressive if the person who performs or fails to perform it injures or damages or otherwise violates the rights of the claimants with unnecessary harshness or severity, such as the misuse or abuse of authority or power of by the taking advantage of some weakness or disability or misfortune of the claimants.
If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering punitive damages, you may consider the degree of reprehensibility of the

defendant's conduct and the relationship of any award of punitive damages to any actual harm inflicted on the claimants.

Punitive damages may be awarded even if you award claimants only nominal, and not compensatory, damages.

Dkt. 92 at 23 (Jury Instruction No. 22).

## D.    DISCHARGE OF JURY

After the jury returned the verdict, the Court excused the jury and heard argument from the parties. Dkt. 96 (transcript). Foot Locker moved the Court to enter the verdict in its favor and disregard the jury's award of punitive damages because such damages are unavailable absent liability. The EEOC moved the Court to send the verdict form back to the jury "to have them reevaluate, or maybe with some guidance about the basis of the punitive damages." *Id*. at 6:1-4. The Court reconvened the jury and the jurors were polled. The Court subsequently discharged the jury and requested additional briefing from the parties.

## E.    PENDING MOTIONS

On April 15, 2009, Foot Locker filed a motion for entry of judgment on the verdict. Dkt. 97. Foot Locker contends that there is no inconsistency in the verdict because the jury "rejected each of the EEOC's liability theories because of a specific missing element." *Id*. at 4. Foot Locker also contends that the jury responses can be reconciled because it was not provided a proper "stop sign" instructing it that Questions 6 through 8 must not be answered unless the jury has found liability under one or more of the claims addressed in Questions 1 through 5. Alternatively, Foot Locker argues that if Question 5(b) is construed as a "stop sign," the Court must disregard the jury's punitive damage award entered in violation of the stop sign.

On April 15, 2009, EEOC filed a motion for new trial. Dkt. 98. EEOC contends that the Court must order a new trial because the verdict was internally inconsistent and cannot be harmonized. EEOC first argues that the award of punitive damages are inconsistent with the jury's finding of no liability because Jury Instruction No. 22 instructs the jury that punitive damages may be awarded if the jury "find[s] for the

plaintiff," and the verdict form required the jury to find that Foot Locker acted with malice or reckless disregard for the claimants' federally protected rights. EEOC maintains that the inconsistency should have been addressed by providing the jury with an explanatory instruction and ordering further deliberations. On April 22, 2009, both parties filed responses. Dkts. 100 (Defendant's response) and 101 (Plaintiff's response).

## II. DISCUSSION

"When confronted with seemingly inconsistent answers to the interrogatories of a special verdict, a court has a duty under the Seventh Amendment to harmonize those answers, if such is possible under a fair reading of them." *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991) (*citing Gallick v. Baltimore & O.R.R. Co.*, 372 U.S. 108, 119 (1963)). This duty involves a "search for a reasonable way to read the verdicts as expressing a coherent view of the case, and . . . [t]he consistency of the jury verdicts must be considered in light of the judge's instructions to the jury." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1074 (9th Cir. 2005).

When a jury has completed a special verdict form, "inconsistencies are problematic and require a new trial only if they arise between two or more factual findings; otherwise, the determination of liability can simply be conformed to the factual findings." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003). If a jury has been discharged, only in the case of a "fatal inconsistency" may a court order a new trial.[2] *See Floyd*, 929 F.2d at 1396; *see also Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1346 (8th Cir. 1996) (the duty to harmonize inconsistent verdicts requires viewing the case in any reasonable way that makes the verdicts consistent) (*citing Gallick*, 372 U.S. at 119).

---

[2] After excusing the jury, the Court stated on the record that the verdict was "internally inconsistent." Dkt. 96:8-10. A better description would have been to state that the verdict contained an "apparent inconsistency."

1    Foot Locker has provided two reasonable ways to read the jury's verdict, and the

2    Court concludes that under either view, the jury's verdict is reconcilable.

3    **A.    *FREEMAN* VIEW**

4    The Court finds the Seventh Circuit case, *Freeman v. Chi. Park Dist.*, 189 F.3d

5    613 (7th Cir. 1999)*,* persuasive in resolving this case. In *Freeman*, the plaintiff brought

6    Title VII and § 1981 racial discrimination claims. The jury returned special verdict forms,

7    finding that (1) the defendant school district had harassed the plaintiff, (2) race was not

8    one of the reasons behind the harassment, (3) race was not one of the reasons the school

9    district discharged the plaintiff, and (4) the school district did not retaliate against the

10   plaintiff for her complaints of discrimination. *Freeman*, 189 F.3d at 615. The jury then

11   elected to award the plaintiff damages as a result of the school district's harassment,

12   termination, and/or retaliation. *Id*. The district court set aside the jury's award of punitive

13   damages, and the plaintiff appealed.

14   The *Freeman* court first addressed the respective roles of the Court and the jury

15   when special verdict forms[3] are used. The *Freeman* court recognized that special verdicts

16   fulfill a "far more limited role" than general verdicts:

17   "Under Rule 49(a) [of the Federal Rules of Civil Procedure],
     governing procedure involving special interrogatories or special verdicts, the
18   trial judge has the responsibility of applying appropriate legal principles to
     the facts found by the jury; it is for the court to decide upon the jury's
19   answers, the jury's special verdicts, what the resulting legal obligation is."
     *Thedorf v. Lipsey*, 237 F.2d 190, 193 (7th Cir.1956); *see also United States
20   v. Kim,* 111 F.3d 1351, 1362 (7th Cir.1997). Thus, the term "damages" in the
     context of a special verdict has more limited meaning than in a general
21   verdict: It refers only to the loss suffered by the plaintiff, a question of fact.
     The legal conclusion, that the defendant is liable for the amount of the loss,
22   will depend on the judge's application of the law to the facts as they are
     found by the jury. *See generally* Wright & Miller, 9A Federal Practice &

23

24   _____

     [3] It is not entirely clear whether the parties agree that the jury used special verdict forms,
25   as opposed to a general verdict form with written questions, *see* Fed. R. Civ. P. 49(b). The Court
     finds that the verdict forms meet the definition of a special verdict as set out in the Federal Rules
26   of Civil Procedure. *See* Fed. R. Civ. P. 49(a). In addition, the Court finds that the *Gallick* rule
     requiring the Court to attempt to harmonize governs here. *See Grosvenor Properties*, 896 F.2d at
27   1151 (finding that Fed. R. Civ. P. 49(b) governs inconsistencies in special verdicts, and applying
     the *Gallick* rule).

28

Procedure § 2510, n. 13 & text accompanying (1995 & Supp. 1999) (*citing Thedorf*, 237 F.2d 190).

*Freeman*, 189 F.3d at 616.

The *Freeman* court then affirmed the district court's decision to disregard the damages award:

> With this distinction in mind, it seems evident that the jury's verdict is not inconsistent. The jury found that the plaintiff was harassed (apparently for reasons other than those protected by Title VII), and suffered damages, or a loss, in the amount of $45,000. However, the judge must enter judgment for the defendant, because the jury found that the harassment was not motivated by racial prejudice, and therefore, the plaintiff did not establish a Title VII violation. As the award of damages in the context of a special verdict does not imply a finding of all the essential elements of the claim, the district court erred in concluding that the verdict was inconsistent, and in striking the jury's answer to Question No. 5. However, the special verdict does not entitle Freeman to a judgment because the harassment for which the jury awarded damages was not motivated by racial discrimination. Therefore we affirm the district court on this issue.

*Id*. at 616.

Similarly, in this case, the jury made factual determinations that preclude this Court from finding that, as a matter of law, Foot Locker is liable as to any of EEOC's claims. While this case differs from *Freeman* in that the jury here awarded punitive damages, as opposed to actual damages, and made the additional factual determination that Foot Locker acted with "malice or reckless disregard for [each claimants'] federally protected rights," the outcome must be the same. As a matter of law, EEOC is not entitled to punitive damages because the jury found missing elements as to each of the five substantive claims in this case.

EEOC argues that the verdict cannot be harmonized because, in light of Jury Instruction No. 22 and Verdict Form Questions 6 through 8, the jury must have intended to "find for the plaintiff as to the claims set out in the instructions." Dkt. 101 at 3. EEOC further maintains that "by awarding punitive damages, the Jury found for Plaintiff on liability." *Id*. at 5.

While EEOC persuasively argues that by awarding damages the jury must have found that Foot Locker is liable, EEOC has not shown that the verdict is fatally inconsistent. Most importantly, the jury made factual findings as to the substantive claims in this case by answering Questions 1 through 5 and found missing elements. The Court must assume that the jury correctly marked these forms. *Floyd*, 929 F.2d at 1399. Assuming each answer is correctly marked, the Court must then "try to explain the apparent inconsistency in light of the jury instructions and the special verdict as a whole." *Id*. Similarly to the court's findings in *Floyd*, there are several plausible explanations for this verdict. First, the jury may have misunderstood the Court's instructions regarding punitive damages. *See id.* It may have viewed punitive damages as a separate claim, and found that while none of the elements of the actual five claims were satisfied, Foot Locker nonetheless acted maliciously or recklessly as to the claimants' federally protected rights. The Court notes that the term "federally protected rights" may have been interpreted by the jury to encompass something different than the rights addressed in EEOC's five claims. The Court further notes that Questions 6 through 8 did not specifically mention any of the five claims, nor did the questions reference any of the elements of the alleged claims.

Second, the jury may not have understood that, as a matter of law, punitive damages are not available absent a finding of liability. *See id.* The jury "may simply have wished to compensate [the claimants] as an act of charity," *see id.*, or the jury may have wanted to punish Foot Locker for actions it found contemptible, despite the missing elements of the substantive claims.

**B.     *FLOYD* VIEW**

Under a second view, the jury verdict may be reconciled because the jury disregarded a "stop sign" by moving on to punitive damages after finding missing elements as to each of the five substantive claims. When a jury's special verdict includes findings that disregard a trial court's express instructions, the trial court must disregard

ORDER - 8

them as surplusage, as a matter of law. *Floyd*, 929 F.2d at 1397. This Court must consider the verdict in light of the instructions and the verdict form provided to they jury. *See El-Hakem, supra*. Here, a fair view of the jury's verdict is that the jury disregarded "stop signs" provided by Jury Instruction No. 22, and by Verdict Form Question 5(b).

First, Jury Instruction No. 22 instructed the jury that it could award punitive damages "if [the jury] find[s] for the plaintiff." Based on the jury's answers to Questions 1 through 5, the jury found that the elements of each of the five claims were not satisfied. Thus, the jury did not "find for the plaintiff" prior to moving on to Questions 6 through 8. Because Questions 1 through 5 addressed the specific elements of each of the five claims, while Questions 6 through 8 referred only generally to "federally protected rights," the jury's answers to Questions 1 through 5 must prevail.

Second, while Question 5(b) could be read as providing the jury discretion to move on to the punitive damages questions, the Court is satisfied that when read in conjunction with Jury Instruction No. 22, Question 5(b) provides an adequate (albeit imperfect) stop sign. Notably, the jury followed the "stop signs" in Questions 1 through 4, which instructed the jury that it "need not" answer the remaining subparts of the respective questions if it answered "no." *See* Dkt. 93, 1-11.

Question 5(b) instructed the jury that it "need not answer *any additional questions*," yet the jury went on to answer the punitive damages questions. *See id*. at 12 (emphasis added). After following this stop sign by not answering Questions 5(c) through (f), the jury violated the stop sign by proceeding to answer Questions 6 through 8. While the Court recognizes that the jury could have exercised the discretion inferred from the term "need not," the Court finds it significant that the jury reacted to each of the other stop-signs by not responding to subsequent questions. Additionally, the use of the term "need not" in Question 5 may have been used to permit the jury to answer "no" to subparts of Question 5, but allow the jury to proceed to the punitive damages questions in the event the jury had found liability in answering Questions 1 through 4. In other words,

ORDER - 9

had the jury found liability for sexual harassment in Questions 1 through 3, but found no liability for retaliation in Question 5, the jury could have proceeded to Questions 6 through 8, as directed by the punitive damages instruction.

**C.    COURT'S DECISION TO DISCHARGE THE JURY**

The Court acknowledges that, prior to the Court's discharging of the jury, EEOC requested the resubmission of the verdict form to the jury with clarifying instructions. The Court recognizes that at least one Ninth Circuit case favors this practice when an apparent inconsistency exists. *See Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003). However, to the extent EEOC assigns error to the Court's denial of its request, and assuming this is part of the basis for their motion for a new trial, the Court concludes that it did not err. While *Duk* rejected the Fourth Circuit's position on this issue, which had determined resubmission to be an abuse of discretion, *see McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978), *Duk* nonetheless recognized that a trial court has discretion whether to resubmit the verdict form to the jury for further deliberations when faced with an apparent inconsistency. *Id.*  While upholding a trial court's resubmission, *Duk* did recognize the risk of a jury reaching an improper "compromise" verdict. *See id.*  Such a risk was apparent in this case.

### III.  ORDER

Therefore, it is hereby

**ORDERED** that Defendant's motion for entry of judgment (Dkt. 97) on the verdict is **GRANTED** and Plaintiff's motion for a new trial (Dkt. 98) is **DENIED**.

It is further **ORDERED** that pursuant to Fed. R. Civ. P. 58(b)(2)(B), judgment is entered against Plaintiff as to all claims, and the jury's award of punitive damages is set aside.

DATED this 28th day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 10